### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>GRAYLING DAVIS,          )<br>        Petitioner,     )<br>                     )<br>v.                    )<br>                     )<br>BERNARD BRADY,     )<br>     Superintendent, Old )<br>     Colony Correctional )<br>     Center,          )<br>        Respondent.  )<br>_____) | Civil Action No. 04-10386-MLW |

### RESPONDENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO HABEAS CORPUS PETITION

The respondent, through his counsel, the Attorney General of the Commonwealth of Massachusetts, hereby opposes the Petition for a Writ of Habeas Corpus that is the subject of the captioned action. The petitioner, Grayling Davis, has not demonstrated that the claims in his petition warrant the extraordinary relief of a writ of habeas corpus.

### BACKGROUND

On January 19, 1996, Davis was indicted by a Middlesex County grand jury for two counts of rape, two counts of indecent assault and battery on a person over fourteen, nine counts of violating the provisions of a restraining order, and one count each of assault and battery, threatening to commit a crime, and breaking and entering in the nighttime with intent to commit a felony. Davis directed all of this conduct at his estranged wife. [Supplemental Answer ("S.A.") Tab 1, p. 5, 19]. Subsequently, a Superior Court jury convicted the petitioner of all charges, except breaking and entering and one count of violating a restraining order. [S.A. Tab

2

1, p. 17].  He is currently serving committed ten to fifteen year state prison sentences for his

convictions.  [S.A. Tab 1, p. 14].[1]

The petitioner timely appealed his convictions to the Massachusetts Appeals Court

("Appeals Court").  There he raised twelve claims: 1) denial of his right to a fair trial by treating

a juror challenge as peremptory rather than for-cause; 2) error in permitting the prosecution to

introduce the victim's diary detailing the rapes and sexual assaults without sufficient limiting

instructions; 3) denial of the right to self-representation at his bail hearing; 4) denial of the right

to self-representation by allowing standby counsel to conference the case in the petitioner's

absence; 5) denial of the right to counsel after the petitioner learned that standby counsel would

not give him the amount of assistance he anticipated; 6) denial of the right to counsel by limiting

the role of standby counsel "only after [the petitioner] had decided to waive his counsel"; 7)

ineffective assistance of standby counsel; 8) denial of due process by a voir dire jury instruction

that the defendant had to prove his innocence; 9) interference with the petitioner's right to call

witnesses in his defense; 10) interference with the petitioner's right to cross-examine witnesses;

11) judicial bias against the petitioner; and 12) improper instruction on the elements of indecent

assault and battery.  The petitioner filed a separate, pro se brief, raising three of the same claims

made in his primary brief.  [S.A. Tab 5, p. i-ii].[2]

The Appeals Court affirmed the petitioner's convictions in an unpublished memorandum

---

[1] The petitioner was sentenced to committed, concurrent ten to fifteen year sentences for his rape convictions.  [S.A. Tab 1, p. 14-15].  He was sentenced to additional state prison sentences, but they are not discussed here because they run concurrently with the sentences for rape.  *Id.*

[2] The petitioner's claims in his supplemental brief mirrored claims 1, 8, and 9 in his primary brief.

3

issued pursuant to its Rule 1:28 on January 3, 2002. *See Commonwealth v. Davis*, 57 Mass. App. Ct. 1101, 780 N.E.2d 970, 2002 WL 31915817 (2002). The petitioner subsequently applied unsuccessfully for further appellate review in the Supreme Judicial Court ("SJC") on February 27, 2003, and again on May 3, 2004.[3] He turned to this Court for relief in the form of a petition for a writ of habeas corpus on February 26, 2004.

## STATEMENT OF FACTS

The state court's findings of fact are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003), as well as to any factual findings implicit in the state courts' rulings. *See, e.g., Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F. Supp.2d 509, 514 (D. Mass. 1999).

The Appeals Court found the following facts with respect to the petitioner's convictions:

> Following a jury trial in Middlesex Superior Court, the defendant, Grayling Davis, was convicted on two counts of rape (G.L. c. 265, §22(b)), two counts of indecent assault and battery on a person fourteen years or over (G.L. c. 265, § 13H), one count of assault and battery (G.L. c. 265, § 13A), eight counts of violating a restraining order (G.L. c. 209A, § 7), and one count of threatening to commit a crime (G.L. c. 275, § 2). These charges all arose out of a tumultuous, and at times violent, domestic relationship between the defendant and the victim, his estranged wife.

---

[3] This supplemental application for further appellate review raised the additional claim that the trial judge shifted the burden of proof to the petitioner during his final charge to the jury. [S.A., Tab 3, p. 5].

4

*Davis*, 2002 WL 31915817, at *1.[4]

## ARGUMENT

I.  **THE PETITIONER'S FAILURE TO CITE TO ANY UNITED STATES SUPREME COURT PRECEDENT THAT THE MASSACHUSETTS COURTS CONTRAVENED UNDERSCORES THE FACT THE HABEAS CORPUS RELIEF IS INAPPROPRIATE IN THIS CASE.**

Since Davis's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1)." *Brown v. Payton*, 544 U.S. ___, 125 S. Ct. 1432, 1438 (2005).

"A state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applied a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result. *Williams v. Taylor*, [529 U.S. 362 (2000)]; *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court decision involves an unreasonable application of [the Supreme] Court's precedents if the state court applies [the] Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor*, [529 U.S.] at 405; *Woodsford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)." *Brown*, 125 S. Ct. at 1438-

---

[4] The petitioner does not appear to challenge these, or any of the Appeals Court's factual findings.

5

1439.

There is no bright line rule as to what constitutes an "objectively unreasonable" application of established Supreme Court precedent. *Williams*, 529 U.S. at 410. As the *Williams* decision makes clear, however, an unreasonable state-court determination is not the equivalent of an incorrect one. *Id.*

> Indeed, because Congress used the word "unreasonable" . . . , and not words like "erroneous" or "incorrect," a federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 534 U.S. 925 (2001). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001) (under AEDPA's "broad objective standard, a federal court cannot grant habeas relief simply because it disagrees with or finds error in the state court's application of federal law"), *cert. denied*, 535 U.S. 960 (2002).

In his habeas petition, and in his memorandum in support, the petitioner raises twelve grounds for relief. Although he cites Supreme Court and other pertinent federal precedent in his memorandum, he uses this authority to establish the applicable rule of law. In not one instance does he explain how the decision of the Massachusetts Appeals Court contravened this precedent or the underlying rules they articulate. *See* Pet. Mem. at 14-15. His failure to do so mandates dismissal of his petition. 28 U.S.C. § 2254(d)(1).

6

II.    **EVEN IF THIS COURT DETERMINES THAT THE PETITIONER HAS RAISED A COGNIZABLE CLAIM FOR HABEAS CORPUS RELIEF, IT SHOULD DENY THE PETITION BECAUSE THE MASSACHUSETTS COURTS SCRUPULOUSLY HONORED HIS FEDERAL CONSTITUTIONAL RIGHTS.**

A.    The State Courts Honored The Petitioner's Right To Counsel.[5]

The petitioner begins his memorandum by making the diametrically opposed arguments that he was denied both his right to counsel and his right to represent himself.  *See* Pet. ¶¶ 12(B)-(C); Pet. Mem. at 9.  The crux of these claims is: "Immediately prior to trial, the court redrew the boundaries for standby counsel.  [citation omitted].  This rendered [his] prior counsel waiver invalid."  Pet. Mem. at 11.  This purported shift in the role of standby counsel, he argues, simultaneously deprived him of his right to counsel, because his waiver was invalid, and his right of self-representation, because he was not given the assistance he expected.  Pet. Mem. at 11.  In its memorandum and order, the Massachusetts Appeals Court found the following with respect to these claims:

> The defendant, after dismissing seven attorneys, filed a motion prior to trial to proceed pro se with the assistance of standby counsel.  Two different judges made him aware of the difficulties and hazards of proceeding pro se and, although he had no constitutional right to the appointment of standby counsel[6] . . . his motion

_____

[5] Responding to the petitioner's argument "B.1" at pages 9-11 of his memorandum.

[6] "When his motion for standby counsel was allowed, the [petitioner] explicitly said he did not want counsel to speak for him 'in any way' but would not mind if counsel approached him with suggestions.  When counsel made his first appearance, the motion judge told him 'to be available to assist Mr. Davis when he requests assistance and when appropriate to offer your thoughts. . . . But the quarterback by his own wish is the Defendant himself.'  After the jury were selected, on the day before trial, the [petitioner] insinuated that he did not think standby counsel was doing enough on his behalf.  The trial judge said to the [petitioner]: 'I will tell you what standby counsel means. . . . Standby counsel means that the lawyer sits at counsel table.  You conduct the case.  Standby counsel is there to talk with you, but standby counsel assumes no responsibility for the [conduct of the trial] . . .'"  *Davis*, 2002 WL 31915817, at * 1, n.1  The petitioner does not dispute this characterization of what transpired at trial.

7

> was allowed. He was later permitted to replace the original standby counsel with
> a second after expressing a somewhat strained concern that the first might have a
> conflict of interest.

*Davis*, 2002 WL 31915817, at * 1. The Appeals Court also noted that "[t]here is nothing to the

[petitioner's] contention" with respect to these claims. *Id.* This observation is correct. As the

First Circuit has noted, "[a]n indigent defendant has a sixth amendment right to appointed

counsel, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), and a corresponding right to proceed

without counsel, *Faretta v. California*, 422 U.S. 806, 807 (1975), but these rights are mutually

exclusive." *United States v. Nivica*, 887 F.2d 1110, 1121 (1st Cir. 1989), *cert. denied*, 494 U.S.

1005 (1990). However, "[a] defendant has no right to hybrid representation." *Id.; McKaskle v.

Wiggins*, 465 U.S. 168, 183 (1984). Since the petitioner had no right to standby counsel, it

follows that he has no valid claim that his right to proceed pro se was violated by the state court's

purported "redr[awing of] the boundaries for standby counsel." Pet. Mem. at 11.

The petitioner's related argument, that the state court denied him his sixth amendment

right to counsel by rejecting his request to revoke his waiver of counsel on the eve of trial, *see*

Pet. Mem. at ¶ 12(c), is similarly unavailing. As the Appeals Court found:

> In the circumstances, the judge acted well within his discretion in holding the
> defendant to his repeated waivers of counsel and treating the eleventh-hour
> request to "change counsel" as another of his "dubious last-minute efforts to
> retract his decision to represent himself . . . [in order to] postpon[e] the day of
> reckoning.

*Davis*, 2002 WL 31915817, at *2 (quoting *Commonwealth v. Higgins*, 23 Mass. App. Ct. 552,

556, 503 N.E.2d 1326 (1987). This is true as a matter of federal law as well because "[i]t is . . .

well within the district court's discretion to refuse a defendant's request to withdraw from self-

representation after a valid waiver if a defendant seeks counsel in an apparent effort to delay or

8

disrupt proceedings on the eve of trial, or once trial is underway." *United States v. Proctor*, 166 F.3d 396, 402 (1st Cir. 1999) (citations omitted). Since there was no error, habeas corpus relief does not lie here.

B.    The Petitioner's Trial Was Fair In Every Respect.[7]

The petitioner raises four claims that he maintains resulted in the deprivation of his right to a fair trial. Specifically, he claims that the trial court: 1) improperly conducted a pretrial hearing outside of his presence; 2) improperly treated a juror challenge as peremptory as opposed to for-cause; 3) misinstructed the jury as to the Commonwealth's burden of proof; and 4) erroneously instructed the jury on the elements of indecent assault and battery. None of these claims is meritorious.

1.    The Petitioner Had No Right To Represent Himself At A Brief Discussion To Determine Whether It Was Appropriate To Disclose The Identity of The Petitioner's Children's Guardian Ad Litem To Him.

The petitioner argues that the state court violated his right to be present when it allowed his children's guardian ad litem ("GAL"), the prosecutor, and standby counsel to appear briefly outside of his presence. *See* Pet. ¶ 12(G); Pet. Mem. at 11. The conversation took place at the GAL's urging, who had completed his investigation as to whether it was in the children's best interest to be interviewed by the petitioner's investigator, and who sought to address the question of whether the identity of the children's therapist should be disclosed to the petitioner. [P. Tr. Sept. 11, 1996: 3-5].[8]

_____

[7] Responding to additional arguments raised in the petitioner's argument "B.1" at pages 9-11 of his memorandum.

[8] For the Court's convenience, the respondent has filed complete copies of all state court transcripts cited in this memorandum.

9

It is, of course, well settled that a pro se defendant has a right to be present at all critical stages in the criminal justice process. *See Faretta*, 422 U.S. at 819-821. A stage may properly be considered "critical" when "the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Maine v. Moulton*, 474 U.S. 159, 170 (1985) (internal quotations omitted). In this case, the limited discussion[9] of whether to disclose the name of the children's therapist cannot be considered a "critical" stage requiring the petitioner's presence because this discussion cannot be said to have rendered the subsequent trial a mere formality. *Contrast Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (citations omitted) (entry of a guilty plea is a "critical stage"). Since the petitioner had no right to be present, no constitutional violation occurred.

Moreover, even if this conversation could be construed as a critical stage, the error was remedied when, later during the hearing, in the petitioner's presence, the entirety of the conversation was disclosed to him. [P. Tr. Sept. 11, 1996: 34]. Because the petitioner was informed of the entirety of the conversation, the same day the conversation took place, any constitutional error that may have taken place had no impact on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Medina v. Matesanz*, 298 F.3d 98, 101 (1st Cir. 2002) (federal habeas court bound to uphold state court judgment as long as error did not have substantial injurious effect on jury's verdict); *Sanna v. DiPaulo*, 265 F.3d 1, 14 (1st Cir. 2001).

       2.    <u>Since There Is No Constitutional Right To A Peremptory Challenge, Federal Habeas Relief Cannot Lie Based Upon A Judge's Decision To Treat A Challenge As Peremptory As Opposed to For-Cause</u>.

The Petitioner next claims that the state trial judge improperly treated a juror challenge as

_____

[9] It bears noting that the entire conversation comprises three pages of transcript. [P. Tr. Sept. 11, 1996: 3-5].

10

peremptory rather than for-cause. Pet. ¶ 12(A); Pet. Mem. at 11. Here, it is unnecessary to

examine what transpired below[10] because there is no constitutional right to a peremptory

challenge. *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *Ross v. Oklahoma*, 487

U.S. 81, 88 (1988). Consequently, the petitioner's claim is not congnizable in the habeas arena.

3.      The Judge's Misstatement To The Venire As To The Burden Of Proof Did
        Not Result In Burden Shifting Where The Judge Corrected Himself
        Moments Later And Where He Repeatedly And Correctly Recited The
        Governing Law During The Trial And In His Final Charge To The Jury.

Next, the petitioner argues that the trial judge's misstatement regarding the burden of

proof before the voir dire of individual jurors began[11] mandates reversal by this Court. Pet. ¶

12(K); Pet. Mem. at 11. Specifically, the judge said:

> Which of the following two statements is true? Statement number one: When a
> person is accused o[f] a crime, he has to prove that he is innocent. Statement
> number two: When a person is accused o[f] a crime, the government has to prove
> that he is guilty[.] Well, the correct answer is number one.

*Davis*, 2002 WL 31915817, at * 3, n.6.

It is bedrock law that it is constitutional error to instruct that the defendant bears any

burden to prove his innocence. *See, e.g., Carella v. California*, 491 U.S. 263, 265 (1989).

However, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it

---

[10] In its memorandum and order, the Appeals Court adopted the Commonwealth's
arguments with respect to all claims. *See Davis*, 2002 WL 31915817, at *1, 3. According to the
Commonwealth's brief, the juror in question, juror 2-12, when asked whether she felt that a
defendant's failure to testify was tantamount to an admission of guilt, responded that she would
believe the defendant was hiding something. [S.A. Tab 6, p. 22]. The defendant immediately
stated: "I challenge this juror." *Id.* When the judge later remarked that the petitioner had used
two of his peremptory challenges (he had used one before this statement), the petitioner did not
object. *Id.*

[11] The petitioner acknowledges that this statement took place "pre-charge." Pet. ¶ 12(K).

11

will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process' . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-157 (1973)). In determining the effect of the instruction on the validity of the conviction, the court must also apply the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp*, 414 U.S. at 147.

When viewed through the appropriate prism, it becomes readily apparent that the petitioner's argument lacks merit. The judge gave the erroneous instruction, aptly described by the Appeals Court as "circuitous[]," before the voir dire of the individual jurors began. *Davis*, 2002 WL 31915817, at * 3. This was twelve days before the petit jury commenced its deliberations. *Id.* Moreover, as the Appeals Court noted, the defense did not object to this statement, and "[a]lmost immediately thereafter, the judge correctly described the Commonwealth's burden of proof beyond a reasonable doubt, including the defendant's presumption of innocence." *Id.* Further, "[t]he judge repeated the correct legal principles the next day to the empanelled jury and again at the close of trial in his final . . . charge, emphasizing the Commonwealth's burden of proof repeatedly as to each element of each offense charged." *Id.*[12] Under these circumstances, the judge's misstatement would not give rise to reversal on direct appeal. *See Henderson*, 431 U.S. at 154. It is thus axiomatic that the petitioner is not

---

[12] The petitioner does not challenge this recitation of what transpired at his trial.

12

entitled to habeas relief on this ground.

4.    The Trial Judge Properly Instructed The Jury On The
      Elements of Indecent Assault And Battery.

The petitioner also argues that the trial judge misinstructed the jury on the elements of

indecent assault and battery (Mass. Gen. Laws ch. 265, § 13H).  *See* Pet. ¶ 12(L); Pet. Mem. 11.

While he is correct that the due process clause protects the accused against conviction without

proof beyond a reasonable doubt of each element necessary to prove the offense, *see* Pet. Mem.

at 12; *In Re Winship*, 397 U.S. 358, 360, 364 (1970), here, the judge's charge to the jury was

more than sufficient.

"'The type of conduct that constitutes indecent assault and battery on a person over

fourteen years of age is not defined in G.L. c. 265, § 13H.'"  *Commonwealth v. Castillo*, 55

Mass. App. Ct. 563, 565, 772 N.E.2d 1093, 1095 (2002) (quoting *Commonwealth v. Mosby*, 30

Mass. App. Ct. 181, 184, 567 N.E.2d 939 (1991)).   "'The test for indecent assault and battery is .

. .  an objective one that is bounded by 'contemporary moral values.'"  *Castillo*, 55 Mass. App.

Ct. at 565, 772 N.E.2d at 1095 (2002) (quoting *Commonwealth v. Conefrey*, 37 Mass. App. Ct.

290, 300 (1994), rev'd on other grounds, 420 Mass. 508 (1995) (alterations in original).  "A

touching is indecent when judged by the 'normative standard' of societal mores, it is 'violative of

social and behavioral expectations,' *Commonwealth v. Gallant*, 373 Mass. 577, 580-581, 589,

[369 N.E.2d 707, 709-710, 715] (1997), in a manner 'which [is] fundamentally offensive to

contemporary moral values . . . [and] which the common sense of society would regard as

immodest, immoral and improper.'"  *Castillo*, 55 Mass. App. Ct. at 566, 772 N.E.2d at 1095

(quoting *Mosby*, 30 Mass. App. Ct. at 184).

13

In his closing charge, the judge instructed:

> The government must prove that the defendant, prove beyond a reasonable doubt, that the defendant committed an intentional, unconsented-to touching, in such a manner, let me put it that way, of such parts of [the victim's] body, clothed or unclothed, for the purpose of arousing or gratifying his own sexual desire.

[(Tr. 13: 69), Tab 6, p. 44]. Not only did this instruction require the jurors to find, beyond a reasonable doubt, that the petitioner touched the victim in a manner that is fundamentally offensive to contemporary moral values, the judge added the additional requirement of finding, again beyond a reasonable doubt, that the petitioner committed the touching for sating his sexual desires. Under these circumstances, it cannot be said that the judge misinstructed the jury as to the elements of the crime. There was no error, and consequently, habeas relief is inappropriate here as well. 28 U.S.C. § 2254(d)(1)-(2).

5.    Each Of The Claims Raised In The Petition But Not Briefed Is Meritless.

The petitioner raises three additional claims in his petition that he does not include in his memorandum. These are claims ¶ 12(F), 12(H), and 12(J).[13] The lack of briefing belies their inadequacies. The respondent addresses these claims seriatim.

Although the petitioner claims that he was denied his right to proceed pro se at his bail hearing, *see* Pet. ¶ 12(F), the facts do not support this. Indeed, the petitioner sought only to proceed pro se for the limited purpose of cross-examining his children at a "dangerousness hearing." *See* Mass. Gen. Laws. ch. 278, § 58A.[14] [P. Tr. Feb. 8, 1996: 4-5]. When the

---

[13] In his memorandum, he includes these in his section "B.1," as claims 6, 8, and 10.

[14] Mass. Gen. Laws ch. 276, § 58A, provides, in pertinent part: "The Commonwealth may move, based on dangerousness, for an order of pretrial detention or release on conditions for a felony offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of another, or any other felony that by its nature involves a

14

Commonwealth withdrew its motion to proceed under § 58A, the court conducted a more

traditional bail hearing pursuant to Mass. Gen. Laws ch. 278, § 58. Because the petitioner did

not unequivocally request to proceed pro se at the bail hearing, but instead, sought to proceed pro

se for a limited purpose in a hearing that never took place, he lacks any credible claim that he

was denied his right to self-representation. *See United States v. Woodard*, 291 F.3d 95, 109 (1st

Cir. 2002) ("[c]ourts must indulge in every reasonable presumption against waiver of the right to

counsel.'") (quoting *United States v. Proctor*, 166 F.3d 396, 402 (1st Cir. 1999).

Second, there is nothing to the petitioner's claim that his standby counsel rendered

ineffective assistance. *See* Pet. ¶ 12(H). As the Appeals Court noted,

> The defendant's assertion that he was effectively denied the assistance of counsel .
> . . is belief by the record. It is also unsupported by any case in which a defendant
> was allowed to represent himself with the help of standby counsel. There is
> particularly no support for such claim when a defendant seeks, as was manifestly
> what the defendant essayed here, to manipulate the right to counsel as part of
> obvious delaying tactics.

*Davis*, 2002 WL 31915817, at *1. Because the petitioner is unable to challenge these factual

findings, and continues to be wholly unable to find any authority to support him, habeas corpus

relief must be denied. 28 U.S.C. § 2254(e)(1).

Third, the petitioner's claim that the trial judge was biased against him, *see* Pet. ¶ 12(J), is

woefully inadequate to warrant habeas corpus relief. Because the petitioner makes no reference

to the transcript anywhere in his petition or memorandum, there is nothing to support his claim.

Moreover, the Appeals Court found that "[t]he statements specifically identified by the defendant

as biased and as observed by the jury amounted to isolated, trivial incidents in a multi-day trial

---

substantial risk that physical force against the person of another may result, including the crime
of burglary and arson whether or not the person has been placed at risk thereof . . ."

15

that were the products of the judge's limited effort, in the face of inappropriate or improper

behavior by the defendant, to control the proceedings, reduce unnecessary distraction and delay

by the defendant, correct disregard of proper admonitions and evidentiary rulings, and preserve

courtroom decorum." *Davis*, 2002 WL 31915817, at *2. Under these circumstances, there

would be no basis for reversal on direct appeal, let alone relief under the AEDPA. *Litkey v.*

*United States*, 510 U.S. 540, 555-556 (1994) ("expressions of impatience, dissatisfaction,

annoyance, and even anger" do not suffice to establish bias per se). This Court should reject this

claim as well.

      C.    When Placed In Its Proper Context, It Becomes Abundantly Clear That The Trial
             Judge's Final Instructions To The Jury Resulted In No Burden Shifting.[15]

      The petitioner next alleges that the trial court's so-called "*Bowden* instruction"[16]

instruction "permitted the jury to draw an adverse inference from any failure by [the petitioner] to

offer evidence." Pet. ¶ 12(I); Pet. Mem. at 12.[17] More specifically, he claims that the judge

instructed that the jury could consider evidence "they 'would have liked to have seen' without

limiting the application of this instruction to the Commonwealth's case or reconciling this

instruction with those on the Commonwealth's burden of proof." Pet. ¶ 12(I). The petitioner's

---

[15] Responding to the petitioner's argument "B.2" at page 12 of his memorandum.

[16] *See Commonwealth v. Bowden*, 379 Mass. 472, 485-486, 399 N.E.2d 482, 491 (1980).
*Bowden* stands for the proposition that the failure of the police to conduct a proper investigation
can form a basis for concluding that Commonwealth has failed to satisfy its burden of proof
beyond a reasonable doubt. *Id.*; *Commonwealth v. DiGiambatista*, 442 Mass. 423, 441, 813
N.E.2d 516, 529 (2004). The record is entirely unclear as to whether the judge intended to issue
a *Bowden* instruction when he issued the charge about which the petitioner complains.

[17] The petitioner pressed this claim to the state courts in his supplemental application for
further appellate review. [S.A. Tab 3].

16

contentions are belied by the record.  In fact, the trial judge was careful to both limit the

instruction to the Commonwealth's case and reconciled the instruction with the

Commonwealth's burden of proof:

> Let me remind you, again, of the three basic principles.  A person accused of a crime, or of a series of crimes, is presumed innocent.  A person accused of a crime, or a series of crimes, has no obligation to persuade you of anything, no obligation to prove anything.  The burden of proof rests on the government, and that is the third principle; That the government must prove what it has to prove beyond a reasonable doubt.

> The government has introduced the evidence it believes sustains its position.  The defendant has brought to your attention other evidence.

> That mass of evidence, ladies and gentlemen, is the material from which you work.  It may be that you think there should have been other evidence.  It may be you think that other witnesses should have been brought.  You may certainly take in account the absence of evidence, if you conclude that evidence is absent, that you would have liked to have seen that is significant, you may take that into account by all means.

> But the question for you is: On the evidence that is before you, has the government proved its case beyond a reasonable doubt.

[Tr. 13: 50-51].  This instruction comported with the principles of *In Re Winship*, 397 U.S. 358,

364 (1970), upon which the petitioner relies, and which holds that the government must prove

each element of its case beyond a reasonable doubt, in every respect.  Habeas corpus relief is

inappropriate on this ground as well.

> D.    The State Courts Honored The Petitioner's Rights To Present A Defense And Cross-Examine Witnesses.[18]

The petitioner next complains that the state courts "extensively curtailed his ability to

summons witnesses" and improperly permitted the Commonwealth to introduce portions of the

---

[18] Responding to the petitioner's argument "B.3" at pages 12-13 of his memorandum.

17

victim's diary, which he characterizes as "inflammatory." Pet. ¶ 12(D)-(E); Pet. Mem. at 12-13.

Neither characterization is accurate.

To begin with, a week before trial, the trial judge held an ex-parte hearing with the

petitioner regarding his witness list, which the petitioner estimated to include thirty people. [Tr.

2: 4, 13]. The purpose of the hearing was to determine which of these witnesses would be

subpoenaed, at public expense and the court "emphasize[d] . . . that the defendant [wa]s, of

course, at liberty to obtain by non-subpoena means the attendance of any witness he wants" as

long as the witness could offer relevant evidence. [Tr. 2: 13, 63-64]. During the hearing, the

court heard the petitioner as to an offer of proof for each witness and ultimately permitted three

subpoenas to issue. [Tr. 2: 63]. The court reasoned that "all of the other witnesses . . . either . . .

are witnesses who can expect to be called by the Commonwealth, and as to which the [petitioner

could] obtain an assurance by the Commonwealth that they will be there, and failing to receive

that assurance, he may reapply for summonses, or they are witnesses . . . whose testimony's

pertinence and relevance is at best marginal." [Tr. 2: 63].

At trial, the petitioner called nine witnesses, in addition to himself, to support his defense.

[S.A. Tab 6, p. 21 (listing witnesses called by the petitioner)]. The trial judge acted well within

the broad bounds of his discretion in limiting the number of subpoenas to exclude those

witnesses who would either be present in the courtroom or have no relevant testimony to offer.

*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (accused has federal constitutional right to

present witnesses, but "must comply with established rules of procedure and evidence designed

to assure both fairness and reliability in the ascertainment of guilt and innocence").

Similarly, there is nothing to the petitioner's claim that the state trial judge improperly

18

admitted portions of the victim's diary. *See* Pet. ¶ 12(E); Pet. Mem. at 13. During his cross-examination of the victim, the petitioner introduced portions of the diary in an effort to demonstrate inconsistencies in her testimony. Pet. ¶ 12(E). The Commonwealth, on redirect examination, introduced additional portions which the petitioner characterizes as "graphic," "inflammatory," and "inadmissible self-corroboration." *Id.* Here, the trial judge acted well within the broad bounds of his discretion in determining that the evidence was admissible. *See United States v. Mehtala*, 578 F.2d 6, 9 (1st Cir. 1978) (upholding admissibility of diary into evidence). In any event, because the petitioner is singularly unable to cite to any federal authority, let alone a Supreme Court case, with materially indistinguishable facts reaching an opposite conclusion, this Court must deny him habeas corpus relief. 28 U.S.C. § 2254(d)(1); *Brown*, 125 S. Ct. at 1438-1439.

**III.    THIS COURT SHOULD REJECT THE PETITIONER'S "CUMULATIVE ERROR" ARGUMENT**.

The petitioner's final argument, at section "C" of his memorandum, is a claim for relief under a "cumulative error" analysis. *See* Pet. Mem. at 14-15. This Court should decline to consider the argument because the petitioner has raised it nowhere else, including the petition itself. Because the petitioner has never pressed this claim, it is, at minimum, unexhausted. *See, e.g., Rashad v. Walsh*, 300 F.3d 27, 43 (1st Cir. 2002). In addition, because he has never raised it before, were he to return to state court in an attempt to exhaust it, those courts would decline to consider it pursuant to the waiver doctrine. *See, e.g., Commonwealth v. Balliro*, 437 Mass. 163, 166, 769 N.E.2d 1258, 1262 (2002). Consequently, the claim would be procedurally defaulted. *Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000)

19

(state court's decision not to hear claim on procedural grounds constituted an adequate state ground upon which to deny habeas corpus relief); see *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (habeas court should not review state court decision if its rests on ground that is independent of the federal question and adequate to support the judgment).

Finally, the petitioner has not cited any United States Supreme Court case that stands for the proposition that the collective impact of individual errors, each insufficient on their own to warrant relief, may result in the denial of a fair trial.[19]  Regardless of his inability to cite to any precedent, as discussed *infra*, none of the petitioner's individual claims amounted to constitutional error.  Consequently, assuming a claim of "cumulative error" were cognizable on habeas review, and there appears to be no authority from the Supreme Court or the First Circuit indicating that there is, here, there is no ground upon which to grant this petitioner relief in the form of the writ.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the habeas corpus petition with prejudice.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Daniel I. Smulow
Daniel I. Smulow, BBO # 641668
Assistant Attorney General

---

[19] In fact, on at least one occasion, the Supreme Court has declined to grant certiorari on the issue of whether a court may employ a cumulative error analysis when evaluating a claim for habeas relief.  *See Dreden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992) (en banc), *cert. denied*, 508 U.S. 1082 (1993).

20

Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2949

Dated: April 15, 2005

### Certificate of Compliance with Local Rule 7.1(A)(2)

I, Daniel I. Smulow, hereby certify that I conferred with Attorney James Fox, counsel for the petitioner, on April 15, 2005, and that we were unable to resolve or narrow the issues discussed in this memorandum.

/s/ Daniel I. Smulow