UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRAYLING DAVIS,                    )
        Petitioner,                )
                                   )
        v.                         )   C.A. No. 04-10386-MLW
                                   )
                                   )
BERNARD BRADY,                     )
        Respondent.                )

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                      March 26, 2007

I. INTRODUCTION

     Petitioner Grayling Davis seeks relief pursuant to 28 U.S.C.
§2254. Davis raises in his petition twelve grounds for relief. Of
these, Davis argues, in his memorandum in support, only seven: the
alleged denial of his rights 1) to an impartial jury (Ground One);
to counsel (Ground Two); 2) to self-representation (Ground Three);
3) to call and examine witnesses (Ground Four); 4) to a trial free
of unduly prejudicial evidence (Ground Five); 5) to represent
himself and be present (Ground Seven); 6) to a presumption of
innocence (Ground Eleven); 7) to a jury charge that included every
element of the crimes charged (Ground Twelve). In addition, Davis
presents in his memorandum a "cumulative effect" argument that was
not raised in his petition or presented before the courts of the
Commonwealth of Massachusetts.

     Because Davis' final argument was not exhausted, the court
ordered Davis to show cause why the petition should not be

1

dismissed or, in the alternative, to request that this court delete his unexhausted claims and proceed under the instant petition. Dec. 12, 2006 Order To Show Cause at 5. In response, Davis asked that his unexhausted claim be deleted. Pet. Mot., Jan. 5, 2007.

As explained in the December 12, 2006 Order, a dismissal, even without prejudice, might preclude unfairly the possibility of any federal review of petitioner's federal claims. Dec. 12, 2006 Order at 4. Accordingly, Davis' request to delete his unexhausted claim and proceed under the instant petition is being allowed. For the reasons discussed in this Memorandum, the petition is being denied.

II. BACKGROUND

Davis does not contest any of the state courts' factual findings, which a habeas court must presume correct absent "clear and convincing evidence" to the contrary. 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000).

As explained by the Massachusetts Appeals Court:

> the defendant, Grayling Davis, was convicted on two counts of rape (G.L. c. 265, §22(b)), two counts of indecent assault and battery on a person fourteen years or over (G.L. c. 265, § 13H), one count of assault and battery (G.L. c. 265, § 13A), eight counts of violating a restraining order (G.L. c. 209A, § 7), and one count of threatening to commit a crime (G.L. c. 275, § 2). These charges all arose out of a tumultuous, and at times violent, domestic relationship between the defendant and the victim, his estranged wife.

Commonwealth v. Davis, No. 00-P-925, 2002 WL 31915817, *1 (Mass. App. Ct. Jan. 3, 2002). Before trial began, Davis repeatedly expressed dissatisfaction with his appointed counsel.

[A]fter dismissing seven attorneys, [he] filed a motion...to proceed pro se with the assistance of standby counsel. Two different judges made him aware of the difficulties and hazards of proceeding pro se and, although he had no constitutional right to the appointment of standby counsel... his motion was allowed. He was later permitted to replace the original standby counsel with a second after expressing a somewhat strained concern that the first might have a conflict of interest. He now complains that the waiver of counsel he knowingly and voluntarily effected was rendered invalid and he was denied due process because the trial judge, on the eve of trial, allegedly restricted the role of standby counsel in assisting him to a more narrow scope than had the motion judge.

Id.

In a footnote, the court elaborated, stating:

When his motion for standby counsel was allowed, the defendant explicitly said he did not want counsel to speak for him "in any way" but would not mind if counsel approached him with suggestions. When counsel made his first appearance, the motion judge told him "to be available to assist Mr. Davis when he requests assistance and when appropriate to offer your thoughts. In other words, to take the initiative to offer thoughts and advice to him in terms of the conduct of the preparation of this matter for trial and for the trial itself. But the quarterback by his own wish is the Defendant himself." After the jury were selected, on the day before trial, the defendant insinuated that he did not think standby counsel was doing enough on his behalf. The trial judge said to the defendant: "I will tell you what standby counsel means····· Standby counsel means that the lawyer sits at counsel table. You conduct the case. Standby counsel is there to talk with you, but standby counsel assumes no responsibility for the [conduct of the trial].... If things go wrong, it is not standby counsel's problem.... Standby counsel can observe what counsel might observe just from being a spectator, and he can pass that information on to you. But I am telling you straight, representing yourself in a criminal case is like walking into Mass. General and saying I have a hernia give me a local anesthetic, I'm going to do the surgery myself. It can be done, but it takes a lot more skill than most people innately have.... And if the knife slips, and nerves get cut, or if the stitching isn't done right, so that the wound comes apart in a week, the do-it-yourselfer doesn't have anybody to blame but the person who did it, namely, himself."

3

Id. at n.1. The court then continued:

> [When] trial was about to begin, [Davis asserted] that he was
> dissatisfied with standby counsel's performance and wanted "to
> change the counsel[. . . .]" [In response,] the judge offered
> the defendant the opportunity to amplify his request for
> appointment of new counsel by presenting an affidavit
> addressing the issue, an opportunity the defendant ignored...
> [The judge then held] the defendant to his repeated waivers of
> counsel and treat[ed] the eleventh-hour request to "change
> counsel" as another os his "dubious last-minute efforts to
> retract his decision to represent himself...[in order to]
> postpon[e] the day of reckoning."

Id.

After Davis waived his right to counsel and began representing
himself he was excluded from a brief sidebar among the court, the
prosecutor, the guardian ad litem for Davis' children (the "GAL"),
and Davis' standby counsel. See Sept. 11, 1996 Tr. at 3-6. The GAL
requested the brief sidebar and the exclusion in order to ask that
the court not reveal to Davis the name of the children's therapist,
which was included in a report to the court, in order to protect
the interest of the children. Id. at 3-4. In addition to that
request, the sidebar included a comment from the prosecutor stating
that Davis was a "prolific contactor" and that Davis was likely to
contact the people named in the report. Id. at 5-6. Following the
sidebar and in the presence of Davis, the GAL's report was
impounded and made unavailable to either the defense or prosecution
absent an order from the court. Id. at 34.

Finally, Davis complains about the jury instructions. Before
the trial began, the judge addressed the pool of potential jurors

and:

> mistakenly stated that the defendant had the burden of proving his innocence[.][1]  Almost immediately thereafter, the judge correctly described the Commonwealth's burden of proof beyond a reasonable doubt, including the defendant's presumption of innocence throughout the trial "unless or until he is proven guilty."  The judge repeated the correct legal principles the next day to the empanelled jury and again at the close of trial in his final (unobjected-to and here unchallenged) charge, emphasizing the Commonwealth's burden of proof repeatedly as to each element of each offense charged.[2]  In the context of the trial and the charge as a whole, the one misstatement twelve days earlier was nothing more than an isolated and passing "slip of the tongue[.]"

Davis, 2002 WL 31915817,*3.

At the end of the trial, the trial judge gave two alternative jury instructions regarding the charge of indecent assault and battery, M.G.L. c. 265, §13H.[3]  The judge first explained that:

---

[1] The judge said: "Which of the following two statements is true?  Statement number one: When a person is accused on a crime, he has to prove that he is innocent. Statement number two: When a person is accused on a crime, the government has to prove that he is guilty[.]  Well, the correct answer is number one."  The statement did not induce any objection from the defense.

[2] The trial judge gave the following instructions:

Let me remind you, again, of the three basic principles. A person accused of a crime, or of a series of crimes, is presumed innocent. A person accused of a crime, or a series of crimes, has no obligation to persuade you of anything, no obligation to prove anything. The burden of proof rests on the government, and that is the third principle; That the government must prove what it has to prove beyond a reasonable doubt.

Feb. 6, 1997 Tr. at 13:50-51.

[3] The elements of the crime of indecent assault have been explained by the Appeals Court as follows:

The government must prove that the defendant committed an intentional, unconsented-to touching, in such manner, let me put it that way, and of such parts of [the victim's] body, clothed or unclothed, that a reasonable person in [the victim's] position would believe that a reasonable person in [the victim's] position would find the touching either exceptionally offensive or sexually stimulating.

Feb. 6, 1997 Tr. at 13:69. The judge then gave the following instruction:

Alternatively, the government must prove beyond a reasonable doubt, that Mr. Davis intentionally and without [the victim's] consent, touched her body, or any part of it, clothed or unclothed, for the purpose of arousing or gratifying his own sexual desire.

Feb. 6, 1997 Tr. at 13:69.

IV. DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), establishes the deferential standard of

---

The type of conduct that constitutes indecent assault and battery on a person over fourteen years of age is not defined in G. L. c. 265, § 13H. A definition adopted by this court provides: "[a]n indecent assault and battery is essentially an act or series of acts which are fundamentally offensive to contemporary moral values . . . . [I]t is behavior which the common sense of society would regard as immodest, immoral and improper . . . . . Thus, in order to prove indecent assault and battery, the Commonwealth must prove beyond a reasonable doubt that the defendant committed an intentional, unprivileged and indecent touching of the victim." Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43-44 (1985). It has been held that the intentional, unjustified touching of private areas such as "the breasts, abdomen, buttocks, thighs, and pubic area of a female" constitutes an indecent assault and battery. Commonwealth v. De La Cruz, 15 Mass. App. Ct. 52, 59 (1982).

Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 185 (Mass. App. Ct. 1991) (footnote omitted).

review applied by a habeas court for the review of a state court judgment that is rendered "on the merits." See 28 U.S.C. §2254(d).[4] On review of such judgments, this court may issue a writ of habeas corpus only if the judgment was "contrary to clearly established law as established by the Supreme Court," or where the judgment provided an "unreasonable application of Supreme Court precedent." 28 U.S.C. §2254(d)(1); Tyler v. Cain, 533 U.S. 656, 660 (2001); O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998).

The petitioner does not argue that his claims were not decided on the merits. Nor does he cite any Supreme Court rulings which the state judgment was "contrary to." Accordingly, the petitioner is entitled to relief only if he can demonstrate that the state court's judgment provided an unreasonable application of Supreme Court precedent.

An application is unreasonable only "if the state court

---

[4] Section 2254 states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Williams</u>, 529 U.S. at 407-09, 413. The fact that the state court merely may have reached an incorrect result is not sufficient; the result must be unreasonable. <u>McCambridge v. Hall</u>, 303 F.3d 24, 36-37 (1st Cir. 2002) (<u>en</u> <u>banc</u>). Where, for example, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. <u>McCambridge</u>, 303 F.3d at 37. Under this standard, the petitioner's claims fail.

A. <u>Right to an Impartial Jury</u>

In Ground One of his petition, Davis argues that he was denied his Sixth Amendment right to an impartial jury because he used a peremptory challenge to remove a prospective juror who stated that she would view a defendant's failure to testify as an admission of guilt. Davis cites no Supreme Court case to support his argument. Moreover, there is no such precedent.

Even assuming that the trial judge refused to excuse the juror for cause, a fact that is not alleged, there is no constitutional error. In <u>Ross v. Oklahoma</u>, 487 U.S. 81 (1988), the Supreme Court reaffirmed that "peremptory challenges [to prospective jurors] are not of constitutional dimension[.]" 487 U.S. at 88. In <u>United States v. Martinez-Salazar</u>, 528 U.S. 304 (2000), the Court held

that where a defendant exercises a peremptory challenge to remove a juror who should have been removed for cause, "and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." 528 U.S. at 307. Here, the allegedly biased potential juror was removed. Accordingly, the Appeals Court did not unreasonably refuse to find a constitutional violation. Rather, its ruling was correct. Id.

B. Right to Counsel

Davis claims, in Ground Two of his petition, that he was denied the right to counsel because his waiver of that right was not knowing. More specifically, Davis claims that his waiver was made with the understanding that standby counsel would play an active role in his defense, an understanding that was proven false by the trial court's alleged subsequent alteration of the standby counsel's role.

The Sixth and Fourteenth Amendments to the Constitution guarantee an accused the right to represent himself in a state criminal proceeding, but require that the courts ensure that the right is exercised knowingly, voluntarily, and intelligently. See Faretta v. California, 422 U.S. 806, 819, 835 (1975). A prisoner seeking habeas corpus relief bears the burden of demonstrating that his waiver was not competently and intelligently made. See Maynard v. Meachum, 545 F.2d 273, 277-78 (1st Cir. 1976).

9

The Commonwealth does not address the issue of waiver. It states only that Davis has no right to standby counsel and, therefore, could not have been prejudiced by the recasting of standby counsel's role. This argument misses the heart of the issue. While Davis may have had no right to standby counsel, the Sixth Amendment would be violated if the trial court allowed Davis to proceed <u>pro</u> <u>se</u> based on a waiver rendered unknowing by false information concerning the role of standby counsel. <u>See</u> <u>Maynard</u>, 545 F.2d at 277-78. Nonetheless, Davis' claim fails because he has not demonstrated that the state court's denial of his claim was an unreasonable application of Supreme Court precedent.

As the Appeals Court noted, "two different judges made [Davis] aware of the difficulties and hazards of proceeding <u>pro</u> <u>se</u>[.]" <u>Davis</u> 2002 WL 31915817, at *1. Moreover, "[w]hen his motion for standby counsel was allowed, [Davis] explicitly said he did not want counsel to speak for him 'in any way[.]'" <u>Id.</u> at *1 n.1. Therefore, Davis, rather than the court, imposed the major limitations on stand by counsel. Even assuming that the trial judge's comments created an expectation related to standby counsel's role, those comments were not made until after the waiver was entered. <u>Id</u>. Accordingly, the Appeals Court reasonably held that Davis' waiver of his right to counsel was made knowingly and

intelligently.[5]

B. Right To Self-Representation

In Faretta, the Supreme Court recognized a defendant's right to self-representation. 422 U.S. at 806. This right flows from the spirit and language of the Sixth Amendment, which contemplates "that counsel should be an aid to a willing defendant -- not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." Id. at 820.

In order to preserve the right to self-representation, a trial court cannot allow standby counsel to take from a defendant actual control of the case as this is the core of the right to self-representation as identified in Faretta. See McKaskle v. Wiggins, 465 U.S. 168, 178 (1984). Further, a trial court may not allow standby counsel to destroy the jury's perception that the defendant is representing himself "since the right to appear pro se exists to affirm the accused's individual dignity and autonomy." Id.

Davis argues, in Ground Seven of his petition, that the trial court deprived him of the ability to control his own defense by conducting a pretrial conference outside of his presence. As explained earlier, the colloquy from which Davis was excluded

---

[5] In Ground Three of his petition, Davis asserts that the trial judge unconstitutionally refused his request to revoke his waiver of counsel. The Appeals Court did not find that Davis attempted to revoke his waiver, Davis presents no facts to suggest that there was an attempt to revoke the waiver, and Davis' memorandum in support of his petition makes no arguments on this point.

involved a brief sidebar conference among the prosecutor, the GAL for Davis' children, and Davis' standby counsel. Sept. 11, 1996 Tr. at 3-6. The GAL requested the brief sidebar to ask that the court not reveal to Davis the name of the children's therapist, which was included in a report to the court, in order to protect the interest of the children. Id. at 3-4. In addition to that request, the sidebar included a comment from the prosecutor stating that Davis was a "prolific contactor" and that Davis was likely to contact the people named in the report. Id. at 5-6. Following the sidebar and in the presence of Davis, the GAL's report was impounded and made unavailable to either the defense or prosecution absent an order from the court. See id. at 34. Davis alleges that this constituted a violation of his right of self-representation.

It was not unreasonable for the Appeals Court to hold that Davis' Sixth Amendment right to self-representation was not impaired. The proceeding occurred outside the presence of the jury, so the dignity interest recognized in Faretta was not implicated. Moreover, "Faretta rights are adequately vindicated in proceedings outside the presence of the jury if the pro se defendant is allowed to address the court freely on his own behalf." McKaskle, 465 U.S. at 179. Here, the court's decision to impound the GAL report was made before Davis, who did not object. Sept. 11, 1996 Tr. at 34-35. Accordingly, it was reasonable for the Appeals Court to conclude that Davis had the opportunity to address the court freely on his

12

own behalf on the matter raised outside of his presence.

    C. <u>Right To Be Present</u>

Read liberally, Ground Seven of Davis' petition also alleges that his exclusion from the sidebar conference with the GAL violated Davis' due process right to be present at trial. Under the Confrontation Clause of the Sixth Amendment and, in some situations the Due Process Clause, a defendant is entitled to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings. <u>See United States v. Gagnon</u>, 470 U.S. 522, 526 (1985) (discussing <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 106 (1934)). However, Davis had no right to be present at the sidebar.

Courts preserve a defendant's right to be present so that the defendant may "give advice or suggestion or even to supersede his lawyer altogether and conduct the trial himself." <u>Snyder</u>, 291 U.S. 106. As discussed earlier, the Appeals Court reasonably concluded that Davis retained actual control of his own case. Accordingly, it was also reasonable to conclude that Davis' absence from the brief sidebar did not frustrate the fairness of the proceeding. If Davis had actual control of the case, nothing was lost by his absence at the brief pre-trial conference, which did not involve discussion of matters to be presented to the jury.

D. <u>The Requirement Of Reasonable Doubt</u>

In <u>In re Winship</u>, the Supreme Court explained that the "Due

Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364 (1970). Davis makes two claims under Winship. He argues first, in Ground Eleven, that the jury instructions erroneously placed the burden of proof on him. Next, in Ground Twelve, Davis claims that the jury instructions failed to set out properly the elements of indecent assault and battery under M.G.L. c. 265, §13H, a crime for which he was convicted. Both claims are without merit.[6]

Davis' first Winship claim is based on the statement by the trial judge during voir dire that a person accused of a crime "has to prove that he is innocent."[7] As explained earlier, the Appeals Court rejected Davis' first contention because, immediately after

---

[6] In his memorandum in support, Davis cites Ground Nine rather than Grounds Eleven and Twelve for his arguments. Ground Nine states that Davis was denied his Fourteenth Amendment rights because the jury instructions "permitted the jury to draw an adverse inference from any failure by Davis to offer evidence." Davis does not explain how this argument is distinct from Ground Eleven. Accordingly, the court treats them as identical.

[7] During voir dire, the judge stated:

Which of the following two statements is true? Statement number one: When a person is accused on a crime, he has to prove that he is innocent. Statement number two: When a person is accused on a crime, the government has to prove that he is guilty[.] Well, the correct answer is number one.

Davis 2002 WL 31915817, at *3.

14

the erroneous statement:

> the judge correctly described the Commonwealth's burden of
> proof beyond a reasonable doubt, including the defendant's
> presumption of innocence throughout the trial "unless or until
> he is proven guilty."  The judge repeated the correct legal
> principles the next day to the empanelled jury and again at
> the close of trial in his final (unobjected-to and here
> unchallenged) charge, emphasizing the Commonwealth's burden of
> proof repeatedly as to each element of each offense charged.

Davis 2002 WL 31915817, at *3. The correct legal principles,
delivered to the jury by the trial judge in his final jury
instructions, are as follows:

> Let me remind you, again, of the three basic principles. A
> person accused of a crime, or of a series of crimes, is
> presumed innocent. A person accused of a crime, or a series of
> crimes, has no obligation to persuade you of anything, no
> obligation to prove anything. The burden of proof rests on the
> government, and that is the third principle; That the
> government must prove what it has to prove beyond a reasonable
> doubt.

Feb. 6, 1997 Tr. at 13:50-51. Given the clear instruction that
Davis "has no obligation to persuade you of anything," the Appeals
Court was not unreasonable in rejecting Davis' first Winship claim.

The second Winship claim contends that the jury instructions
were required to, but did not, explain that the criminal "touching
was immoral and improper as judged by contemporary moral values."
Ground Twelve.[8] The Appeals Court adopted the reasoning in the

---

[8] Understood in a light most favorable to Davis, the jury
instruction equates the element of indecency to a touching of any
part of the victim done "for the purpose of arousing or
gratifying [the defendant's] sexual desire." Davis has not
challenged the constitutionality of the statute as applied to
him.

Commonwealth's brief and held that the elements were described adequately in the jury instruction. Davis, 2002 WL 31915817, at *3. The Commonwealth's interpretation of its own criminal statute is not a matter subject to review by a habeas court. Rather, it is an independent and adequate state law ground to deny Davis' second Winship claim for which this court can provide no relief. As the Supreme Court explained in Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935), "where the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment."

    E. Right to Confront Witnesses

    In Ground Four of his petition, Davis contends that he was denied his right to confront witness as guaranteed by the Sixth and Fourteenth Amendments. In support, he asserts that the trial court curtailed his ability to summon witnesses.

    The Confrontation Clause states only that an accused shall "be confronted with the witnesses against him[.]" Consistent with this constitutional guarantee, Davis was free to confront the witnesses who testified against him. He does not argue otherwise. Whether he was denied the right to call witnesses is a distinct question.

    It appears that Davis meant to raise a claim under the Compulsory Process Clause, which states that a criminally accused

16

shall "have compulsory process for obtaining witnesses in his favor[.]" U.S. Const. am. VI. However, the court may not consider relief under this clause because it was not raised before the Appeals Court and the claim, therefore, is not exhausted. See 28 U.S.C. 2254(b)(1)(a). Accordingly, the court may only consider the Confrontation Clause claim, which the Court of Appeals reasonably denied.

    F. <u>Unduly Prejudicial Cross Examination</u>

In Ground Five, Davis claims that he was denied his Fifth and Fourteenth Amendment rights to a fair trial because the prosecution introduced excerpts from his diary, which he contends were unduly inflammatory. More specifically, Davis argues that:

> [d]uring the Commonwealth's cross examination of Davis, the prosecutor offered substantial additional excerpts from the complainant's diary. The excerpts went beyond any effort to place Davis' use of the diary, during his direct, in proper context.

Pet. Mem. at 12 (citations omitted).

Davis, who is in this case represented by counsel, does not explain which excerpts of his diary were unduly inflammatory or how he was allegedly prejudiced. Moreover, he cites only portions of the trial transcripts that were not submitted to the court. In addition, Davis cites no Supreme Court precedent discussing the constitutional right to be free from unduly prejudicial evidence.[9]

---

[9] Davis cites only <u>Old Chief v. United States</u>, 519 U.S. 172 (1997) (interpreting the Federal Rules of Evidence). The Federal Rules of Evidence do not apply in state criminal proceedings.

As there are no legal or factual arguments to support the claim, the court concludes that the Appeals Court reasonably denied Davis' undue prejudice argument. <u>See</u> D.Mass.R. 7.1(b)(1) ("A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted."); D.Mass.R. 1.3. ("Failure to comply with any of the directions or obligations set forth in...these Local Rules may result in dismissal, default, or the imposition of other sanctions as deemed appropriate by the judicial officer.").

  G. <u>All Other Grounds</u>

  Davis has not submitted argument in support of the remaining claims in his petition, Grounds Three, Six, Eight, Nine, and Ten. Accordingly, they are waived. <u>See</u> D.Mass.R. 7.1(b)(1); D.Mass.R. 1.3.

VI. CONCLUSION

  For the reasons discussed in this Memorandum, it is hereby ORDERED that the Petition For Habeas Corpus, (Docket No. 1), is DENIED.

              <u>/s/ Mark L. Wolf</u>
              UNITED STATES DISTRICT JUDGE

18